WILLIAM BRYAN, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. Bryan and Bass were indicted as principals in a murder. Counsel for Bryan asked the court to charge the jury, that if Bass inflicted the mortal wound Bryan should be acquitted : *Held*, That under the circumstances of the case such refusal so to charge was not error.

2. It is always necessary to prove the venue as laid in the indictment, but if the evidence raises a violent presumption that the offence

for which the prisoner is indicted was committed in the county alleged, it is sufficient.

3. On the trial of an indictment for murder, charging the killing to have been effected by shooting in the left breast, the evidence showing that there were three bullet wounds, one in the left breast, one in the back, the other in the head, each one necessarily mortal, all given by the accused at the same time, and under the same circumstances, but showing that death ensued instantaneously from the wound in the head : *Held*, Not such a variance as would amount to error.

4. The proof must show that the killing was effected by the accused in the manner charged in the indictment, but where there is no possibility of his having been misled, or in any way embarrassed in his defence by the variance, it will be disregarded.

Writ of Error to the Circuit Court for Lafayette county. The facts of the case are stated in the opinion.

*J. N. Stripling* for Plaintiff in Error.

*The Attorney-General* for the State.

MR. JUSTICE VANVALKENBURGH delivered the opinion of the court:

On the second day of December, A. D. 1881, the grand jury of Lafayette county indicted William Bryan for murder in the first degree. The prisoner was tried at the May term of the court held in said county, was convicted as charged and sentenced to death. A motion for a new trial was duly made and denied. The case is here by virtue of a writ of error, and the errors assigned, three in number, are as follows:

1. The court erred in refusing to charge the jury as requested by counsel as follows : " If it is alleged in the indictment that a certain wound caused the death, and the proof shows that another wound caused the death, then you should acquit the defendant."

2. If you believe from the evidence that the defendant, Bass, inflicted the mortal wound, then the defendant, Bryan, should be acquitted, for Bryan could not be principal in the first degree if Bass inflicted the wound that produced death.

3. The court should have set aside the verdict and awarded a new trial, because the venue was not proven and because the proofs did not support the allegations as to the wound that produced the death.

The indictment charges that the prisoner and one Daniel W. Bass, laborers, &c., with force and arms at and within the county of Lafayette and State of Florida, "in and upon one Robert Moore unlawfully, feloniously, wilfully, of their malice aforethought, and with a premeditated design to effect the death of him, the said Robert Moore, did make an assault, and that the said William Bryan then and there had and held in his right hand a pistol then and there charged," &c., &c. ; that said William Bryan discharged such pistol, &c., and mortally wounded the said Moore, of which wound Moore instantly died; that the said "Daniel U. Bass then and there unlawfully, feloniously, wilfully, of his malice aforethought, and from a premeditated design to effect the death of the said Robert Moore was then and there present, aiding, helping, abetting and comforting and assisting, and maintaining the said William Bryan, the said felony and murder aforesaid to do and commit, and so the grand jurors aforesaid, upon their oaths aforesaid, do say that the said William Bryan and the said Daniel U. Bass, the said Robert Moore then and there in the manner and form aforesaid, and by the means aforesaid, unlawfully, feloniously, wilfully of their malice aforethought, and from a premeditated design to effect the death of him, the said Robert Moore, did kill and murder," &c.

These parties were both indicted as principals. The in-

dictment charges Bryan with having inflicted the mortal wound ; the evidence consists of his confessions, together with the statement made by Bass on the trial, and circumstances which tend to corroborate his confessions. There was no proof tending to show that Bass inflicted any wound, save only the statement of Bryan, which evidently the jury did not believe. What the verdict of the jury was as to Bass nowhere appears in this record, the writ of error being taken by Bryan alone. The court committed no error in refusing to charge as requested in the second assignment of error. It is said in Chitty Crim. Law, Vol. 1, page 214, that " if A. be indicted as having given the mortal stroke, and B. and C. as present, aiding and assisting, and upon the evidence it appears that B. gave the stroke, and A. and C. were only aiding and assisting, the evidence will maintain the indictment and judgment be given against all the defendants, for it is only a circumstantial variance, as, in law, the mortal blow is the act of all that are present aiding and abetting." If the indictment had not particularly alleged that Bryan gave the mortal wound, and had the evidence shown on the trial that Bass fired the fatal shot, yet Bryan would have been equally guilty of the murder as Bass. The allegation in the indictment is, that Bryan fired the fatal shot, and the evidence sustains the allegation. 1 Hale's P. C., 437 ; 2 Hale's P. C., 292 ; Roscoe's Cr. Ev., 568 ; Am. Cr. Law, 6th Ed., §598, 129 ; Rex vs. Culkin, 5 Car. & Payne, 121 ; 1 Chitty Cr. L., 559.

The third assignment of error, " because the venue was not proved," is not sustained by the evidence. The witness, A. G. McAulay, clearly proves the time and place. He says : " This was on Saturday night, 24th of November, 1881, in Lafayette county, Florida." It is necessary to prove that the facts occurred within the county named in the

indictment, and within the court's jurisdiction; but, if the evidence raises a violent presumption that the offence for which the prisoner is so indicted was committed in the county where he is tried it is sufficient. 1 Am. Cr. L., §601, 6th Ed.

The first assignment of error, that the court erred in refusing to charge, that " it it is alleged in the indictment that a certain wound caused the death, and the proof shows that another wound caused the death, then you should acquit the defendant," cannot be sustained. The indictment charges that " the said William Bryan, with the leaden bullets aforesaid, out of the pistol aforesaid, then and there by the force of the gunpowder aforesaid, by the said William Bryan, discharged and shot off as aforesaid, then and there unlawfully, feloniously, wilfully, of his malice aforethought, and from a premeditated design to effect the death of the said Robert Moore, did strike, penetrate and wound the said Robert Moore in and upon the left side of the breast of him, the said Robert Moore, giving him, the said Robert Moore, then and there with the leaden bullets aforesaid, discharged and shot out of the pistol aforesaid, by force of the gunpowder aforesaid, by the said William Bryan, in and upon the left side of him, the said Robert Moore, one mortal wound, of the depth of four inches and of the breadth of half an inch, of which said mortal wound the said Robert Moore then and there instantly died," &c.

The principal evidence bearing upon the wound described was that of Dr. Charles Owens, as follows: " I am a physician by profession. Was called to examine the body of the deceased, Moore, on Saturday night, 26th of November, and on Sunday, the 27th. I found a gun-shot or pistol-shot wound, entering a little to the left of the sternum, penetrating the lower lobe of the right lung. The wound was mortal. Penetrated to the depth of five

or six inches, and of the breadth of one-half inch. There were two other wounds I found on the deceased. One in the back, the other in the back of the head. The wound in the breast would not produce death instantly, nor would the wound in the back, though it was mortal, but the wound in the back of the head was necessarily mortal, and must have produced death instantaneously. Ball 32 calibre. Saw ball and compared it with pistol. Corresponded, and fitted the cartridge hulls. I gave the ball to the Coroner, and he gave it to the jury. The wound in the breast was mortal, would necessarily produce death. The wound in the breast did not produce death immediately. The wound in the head would necessarily produce death instantaneously. The wound in the head was the immediate cause of the death. Either of the other wounds would have caused death in a few minutes. The pulmonary artery was severed by the ball that entered the breast from the front. Persons thus wounded never recover."

The counsel for prisoner claims a variance between the charge in the indictment and the proof, inasmuch as the indictment alleges the mortal wound to have been in the left breast, and the proof is that the wound in the back of the head produced the death. The other evidence shows that all three of the wounds as described by the witness, Owens, were gun or pistol-shot wounds, and in prisoner's confession to Dempsey, a witness, he said he shot him first in the breast, then in the back, when deceased fell, and that he then went to him and shot him in the head.

Lou Barker testified that Bryan, on the same night that Moore was killed, told her, measuring on his finger, that he put the pistol that near his head when he shot him the last time.

Caroline Freese, in her evidence, says that Bryan, on the same night of the murder, told her that he shot the man in

the breast, "the man hollowed loud and broke to run. He said he took after him and shot him in the back, the man then fell, and he went up to him and presented the pistol about that far from his head (measuring on his finger) and shot him."

The common law rule required the indictment to state upon what particular part of the body the mortal wound was inflicted, but this is a matter of form so far as it relates to the place where the wound was given, and it is settled that an allegation that the wound was inflicted on one part of the body is sustained by evidence showing that the same character of wound was on another and different part. In 2 Hale's P. C., 185, it is said: "But though the manner and place of the hurt and its nature be requisite, as to the formality of the indictment, and it is fit to be done as near the truth as may be, yet if upon evidence it appears to be another kind of wound in another place, if the party died of it is sufficient to maintain the indictment." In 2 Bishop Cr. Pro., §526, where the same doctrine is laid down, it is said that the reason stated in the books for requiring the particularity with regard to the form of the indictment is "that the court may see that the wound was of such a nature from whence death might ensue." Roscoe's Crim. Ev., 576.

In Dias vs. The State, 7 Blackf., 20, the court say : "For the part of the body to which the violence was applied must be stated (in the indictment), and even if the wound be alleged to have been on the arm, hand, &c., without saying whether the right or left, the indictment is bad. The proof, to be sure, need not correspond in this respect with the allegation, but the allegation itself cannot be dispensed with in the indictment;" and cites 3 Chitt. Cr. L., 735, and Arch. Cr. Pl., 384 ; State vs. Jones, 20 Mo., 58.

In the case of Sanchez vs. The People, 22 N. Y., 147, the

court, in .its opinion, says: " But assuming the common law rule to require the indictment to state the particular part of the body where the mortal wound was inflicted, the consideration that the public prosecutor is not obliged to prove that it was in the part of the body as charged, and that such allegation is sustained by evidence that it was inflicted elsewhere on the body, proves that it is a matter of form, so far as relates to the place upon the body where the wound was inflicted."

In State vs. Fox, 25 N. J. Law, 566, it is said : " A variance between the indictment and the evidence, as to the instrumental cause of death, is not material, provided the party is proved to have died the same kind of death (ex gra. by violence or by poisoning) as mentioned in the indictment. It is sufficient if the substance of the charge be proved without precise regard to circumstances, and therefore if the indictment charge that the defendant, with a knife or dagger, gave the mortal wound, and in evidence it appears that he gave the wound with a sword, staff or bill, the defendant should be convicted. For the substance of the matter is, that the party indicted inflicted a mortal wound, whereof the deceased died."

The rule as stated by Greenleaf, Vol. 1, §65, is as follows : " In an indictment for murder, the substance of the charge is, that the prisoner feloniously killed the deceased by means of shooting, poisoning, cutting, blows or bruises, or the like ; it is, therefore, sufficient, if the proof agree with the allegation in its substance and general character without precise conformity in every particular. In other words, an indictment describing a thing by its generic term is supported by proof of a species which is clearly comprehended within such description." See also Guedel vs. The People, 43 Ill., 226 ; People vs. Colt, 3 Hill, 432.

This precise case, however, is settled by the opinion in

Real vs. The People, 42 N. Y., 270. The court there say: "The indictment contained but one count charging that the killing was effected by shooting the deceased with a pistol in the head. The proof tended to show that the plaintiff in error fired the pistol two or three times at the deceased, inflicting thereby two wounds upon the deceased, one upon the head and one upon the trunk, either of which would have been necessarily mortal, but failed to show which was first inflicted, or which actually caused death. It is true that the evidence must show that the killing was effected by the accused in the manner charged in the indictment, otherwise the accused would be unable to prepare for his defence, and unable to meet the case shown against him upon trial; but whereas in the present case there is no possibility of his having been misled, or in any way embarrassed in his defence by the variance, it will be disregarded. In the present case, the shots were fired almost at the same instant, under precisely the same circumstances, and whether death ensued from the one wound or the other was wholly immaterial."

In the case at bar, the three shots were fired at the same time, under the same circumstances, and death instantly ensued from one of the wounds, all three being mortal.

There was no error in the refusal to charge as requested, and the judgment must be affirmed.

Judgment affirmed.