FRANK ROBERSON, PLAINTIFF IN ERROR, VS. THE
    STATE OF FLORIDA, DEFENDANT IN ERROR.

1.  When an application for a change of venue, based upon the
    gorund of prejudice against the accused in the county where the
    trial is had, is supported only by the affidavit of the accused,
    the refusal of the trial court to grant it will not be reversed in
    the absence of any showing that the decision was not based
    upon the insufficiency of the proof of the facts alleged in the
    affidavit, and it does not appear that the accused was prevented
      from getting corroborative evidence by hostile public senti-
    ment.
2.  A motion in arrest of judgment on the ground of a defect in
    the indictment should be exhibited in the record proper, and
    not in the bill of exceptions.
3.  An indictment alleging the infliction of a mortal wound upon
    the body of the deceased is sufficient without stating upon what
    particular part of the body the wound was inflicted.
4.  The court instructed the jury that "sheriffs, deputy sheriffs
    and constables are not only authorized to arrest public offend-
    ers without warrant, but are required to do so, for all offences,
    committed in the presence of an officer." *Held*, to be erroneous
    as not correctly stating the law on the subject.
5.  The court refused an instruction for the defendant to the effect
    that a sheriff and his deputies have no right to make an arrest
    of any person without lawful warrant, except the person has
    committed a felony or is engaged at the time in a riot or unlaw-
    ful assembly, or is about to commit a felony: *Held*, that the re-
    fusal was correct because of the failure of the instruction to
    include the idea that the officer may arrest without warrant for
    any misdemeanor tending to a breach of the peace when com-
    mitted in view of the officer making the arrest.
6.  When a general exception is taken to the refusal of the court
    to give several charges asserting separate distinct propositions
    of law, and any one of the charges is wrong, the exception will
    be disallowed.

    Writ of Error to the Circuit Court for Duval
County.

    The facts in the case are stated in the opinion of
the court.

*T. A. & B. B. MacDonell*, for Plaintiff in Error.

*The Attorney-General*, for Defendant in Error.

MABRY, J.:

The plaintiff in error was convicted of the murder of Charles M. Sadler and sued out writ of error from the sentence of the court.

The ruling of the court denying an application for a change of venue is assigned as error. This application was presented by a petition signed by the accused and stating that he feared he could not obtain a fair and impartial trial in the county on account of the inhabitants therein being prejudiced against him, and certain facts are stated upon which such fears were based. It is stated that the day after the killing of Sadler and the wounding of another who subsequently died, the newspapers in Jacksonville having a large circulation throughout the county published what was alleged as the facts connecting petitioner with the killing and wounding, and that day after day thereafter such publications continued and so prejudiced the inhabitants of the county that a fair trial could not be had. The petition further states that petitioner's reasons for such belief were based upon expressions of many prominent citizens published in an issue of a named paper, and the alleged expressions of four persons are set out in the petition. It is also stated that a page of the paper published on a given date was filed with and prayed to be taken as a part of the petition, and the comment of the paper on the expression of citizens as given in the petition, is as follows, *viz*: " It will thus be seen that the general opinion prevails all over the city that a speedy trial of

Roberson v. State.—Opinion of Court.

the murderers of deputy sheriff Sadler would result in much good to the community. The indications are that ninety *per cent.* of the people favor such action on the part of Judge Call. This district has a Circuit Judge whose record is a most enviable one, and when Judge Call sees that the public opinion here wants a special term of court, he will undoubtedly order it called and a speedy but fair trial granted to these murderers of the faithful officer of the  law, who, without  any excuse whatever, was slain at Pablo on Monday evening while discharging his duties." The expression of opinion by the four persons, as shown by the petition, was in reference to the holding of a special term of court, and language was used in said expression  that the court should be held to try the murderers of the deputy sheriff who had been killed, and in one "the sooner they hang these Roberson negroes, the better for the community." The petition is supported only by the affidavit of the accused and in the bill of exceptions there is no copy of the paper containing the expression of opinion in reference to holding the special term of court. In the record proper the petition for change of venue is copied, and under a note of the clerk that what followed was a copy of the paper of the date given, is filed a part of a paper purporting to give the expression of opinion of citizens of Jacksonville in reference to holding a special term of court for the purpose of trying the parties who killed the deputy sheriffs. The rule long since established in this court is that when the application for a change of venue on the ground insisted on in the present case is supported only by the affidavit of the accused, the refusal of the court to grant it will not be reversed in the absence of anything to show that the decision of the court was not based upon the insufficiency of the

proof of the facts alleged in the affidavit, and also that the accused was not prevented from getting corroborative evidence by hostile public sentiment. Adams v. State, 28 Fla. 511, 10 South. Rep. 106; Shiver v. State, 41 Fla. ——, 27 South. Rep. 36. Under the rule stated this court is not authorized to interfere with the discretion of the Circuit Judge in refusing to grant the application for a change of venue in this case. If we examine the paper as a part of the petition a different result would not follow. The expressed views of fifty people in the city of Jacksonville in favor of a special term of court to try the persons charged with killing two deputy sheriffs, and some six of this number referring to the accused as being a murderer would not of itself show that the inhabitants of Duval county were so prejudiced against him as to render it improbable that a fair and impartial trial could be had.

Another error assigned and insisted on is that the court erred in denying the motion in arrest of judgment, on the ground that the indictment fails to show upon what part of the body of the deceased the mortal wound was inflicted. The bill of exceptions recites that such motion was made and overruled, but the record proper is silent as to such motion. As the motion in arrest of judgment is based upon an alleged defect in the indictment—a part of the record proper in the case—it should not appear in the bill of exceptions but in the record proper. The contention is that the indictment is fatally defective on account of the alleged defect. This is a mistake. The indictment in the usual form alleges that the accused assaulted Sadler, the deceased, and proceeds as follows, viz: "the said Frank Roberson, a certain pistol then and there being charged with gunpowder and divers leaden bullets, which he, the said Frank Rob-

erson, in his hands then and there had and held against, at and upon the said Charles M. Sadler, then and there feloniously, wilfully and of his malice aforesaid, and from a premeditated design to effect the death of the said Charles M. Sadler, did discharge and shoot off, and that the said Frank Roberson with one of the leaden bullets aforesaid, by force of the gunpowder aforesaid out of the pistol aforesaid by him, the said Frank Roberson, so as aforesaid discharged and shot off, him the said Charles M. Sadler, in and upon the body of the said Charles M. Sadler, then and there feloniously, wilfully and of his malice aforethought, and from a premeditated design to effect the death of the said Charles M. Sadler, did strike, penetrate and wound, giving to said Charles M. Sadler, then and there, with one of the leaden bullets aforesaid out of the pistol aforesaid, so as aforesaid shot off, in and upon the body of the said Charles M. Sadler, one mortal wound, of the breadth of one-third of an inch and of the depth of six inches, of which mortal wound the said Charles M. Sadler then and there instantly died." The mortal wound is clearly alleged to have been inflicted upon the body of the deceased, and this is sufficient under our ruling in Walker v. State, 34. Fla. 167, 16 South. Rep. 80.

It is further assigned as error that the court gave instruction number 8, as follows, *viz*: "Sheriffs, deputy sheriffs and constables are not only authorized to arrest public offenders without warrant, but are required to do so, for all offences committed in the presence of an officer." This instruction, it will be observed, asserts that the officers named therein are authorized and required to arrest without warrant for all offences committed in the presence of an officer. It does not require that the offence shall be committed in the presence of

Roberson v. State.—Opinion of Court.

the officer making the arrest, but when committed in the presence of any officer it authorizes an arrest without warrant. It will be further observed that the charge makes no distinction between felonies and offences tending to a breach of the peace, and misdemeanors generally. If a felony be committed in the presence or view of the officers named in the instruction, or if they have reasonable ground for believing that such an offence has been committed, they may arrest without waiting for a warrant. By our statutes, sheriffs are invested with authority and it is made their duty; in their respective counties, to suppress all tumults, riots and unlawful assemblies, and to apprehend without warrant any person who is in the disturbance of the peace, and to carry him before the proper judicial officer that further proceedings may be had against him according to law. Rev. Stats. §650. At common law a sheriff or his deputy could arrest without warrant for any misdemeanor tending to a breach of the peace when committed in the presence or view of the officer making the arrest. 2 Am. & Eng. Ency. of law (2nd Ed.), 869 and notes, and 873 and notes. Without undertaking to enumerate all the cases in which a sheriff or his deputy may lawfully arrest without warrant, it can safely be stated that the proposition that an arrest can lawfully be made without warrant for all offences committed in the presence of such officer, is too broad, and it is clearly wrong to assert that one officer may arrest without warrant for all offences committed in the presence of another officer. Authority, *supra*; Shanley v. Wells, 71 Ill. 78.

In Wharton's Crim. Pl. & Pr. section 8, it is stated that "sheriffs, constables, officers of the police, are not only authorized to arrest public offenders without warrant, but are required to do so, if there be reasonable

ground for suspicion. For all offences committed in the presence of an officer, this power exists; though for past offences the power is limited to cases of felony and breaches of the peace." The author further says in the same section that "the better view is, that the right, even as to offences committed in the officer's presence, is limited to felonies, breaches of the peace, and such misdemeanors as can not be stopped or redressed except by immediate arrest." The statement in the above quotation that for all offences committed in the presence of an officer the power to arrest without warrant exists must not be taken to mean that for an offence committed in the presence of any officer, a sheriff or his deputy may arrest without warrant when acting independently of the officer who saw the offence. The authorities do not sustain such a doctrine, and the general statement was, doubtless, not intended to convey such idea. Nor do we think the author intended to approve as absolutely correct the statement that for all offences committed in the presence of the officer an arrest without warrant may be made, as in the latter part of the same section it is said in accordance with the better view, that "it was rightly held in New York, in 1871, that neither a justice of the peace nor a constable can, at common law, arrest without warrant, a person committing an illegal act in his presence, unless such act be a felony or involve a breach of the peace, and that cruelty to an animal, though a statutory misdemeanor, is not such an offence as authorizes arrest without warrant." Citing Butolph v. Blust, 5 Lansing, 84. In Barber v. State, 13 Fla. 675, it is held that a person indicted for unlawful imprisonment may show in his defence or justification that the party imprisoned was committing an offence, and that the arrest was for the purpose of taking the offender

before a magistrate, but this was in reference to an offence of felony as the case clearly shows. It is clear, we think, that the accused was entitled, on the evidence adduced, to correct instructions on the subject of arrest, and the one numbered 8, given by the court, was clearly wrong.

The evidence does not show that the accused had committed any felony before the deceased attempted to arrest him, and without intimating that it was not shown that he, just before the attempt to arrest, committed an offence for which he could be arrested without warrant, if committed in the presence or view of the officer, we call attention to the fact that the testimony leaves it in doubt as to whether such was the case. The surrounding circumstances as to distances, places, or even daylight or darkness, are not so given as to leave it free from doubt that what the accused did was in the presence or view of the deceased who was attempting to make the arrest at the time he was shot and killed.

Assignments of error are based upon the refusal of the court to give charges numbered 1, 2, 4, and 5 requested by the accused. The bill of exceptions shows that the court refused to give for the accused four distinct propositions of law, numbered 1, 2, 4 and 5 respectively, and a general exception was taken to the refusal to give the charges as a whole. The first proposition requested is that if the jury "find from the testimony that the defendant was in the physical custody of Sadler and Jenkins, or either of them, and that he by physical exertion broke away from such physical custody, and then and there fired the shot that killed the deceased, Sadler, you will not be justified in finding the defendant guilty of murder in the first degree." We assume that the purpose of the charge was to avail the ac-

cused of the status of having acted on the impulse of the moment without any time for premeditation, and therefore could nat be guilty of the crime of murder in the first degree. Premeditation is a question of fact for the jury to determine from all the testimony in the case. The facts hypothesised in the charge do not as a presumption of law exclude a premeditated design, and the court was clearly right in refusing to give it. The charge is so essentially faulty that further discussion of it is unnecessary.

There was also another charge requested by the accused that was correctly refused, to the effect that a sheriff and his deputies have no right to make an arrest of any person without lawful warrant, except the person has committed a felony or is engaged at the time in a riot or unlawful assembly, or is about to commit a felony. The charge excludes the idea that the officer may arrest without warrant for any misdemeanor tending to a breach of the peace when committed in view of the officer making the arrest. Authorities, *supra*.

Under our rule of practice, we need not consider the other charges refused, as the exception to them was as an entirety, and one incorrect one, defeats the exception. Brown v. State, decided at this term.

For the error of the court in giving charge number 8, the judgment will be reversed and a new trial awarded. So ordered .